Natasha N. Serino, Esq. (SBN 284711)
Shannon F. Nocon, Esq. (SBN 316523)
SERINO & NOCON LLP
10089 Willow Creek Road, Suite 200
San Diego, CA 92131
Tel: (619) 432-2610
nserino@serinonocon.com
snocon@serinonocon.com

Jordan L. Kellogg, Esq. (SBN 347421)
Aisling J. Gorman, Esq. (SBN 346144)
SCHACK LAW GROUP
16870 West Bernardo Drive, Suite 400
San Diego, CA 92127
Tel: (858) 485-6535
jordan@schacklawgroup.com
aislinggorman@schacklawgroup.com

Attorneys for Plaintiff, individually and on behalf of all others similarly situated

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

Kristen Leachty, an individual, on behalf of herself and all others similarly situated;

Plaintiff,

v.

Jackson's Food Company, LLC, a Delaware limited liability company.

Defendants.

Case No.: '26CV5614 GPC BJW

**CLASS ACTION COMPLAINT**

1. **Violations of California's Unfair Competition Law (Business & Professions Code § 17200 et seq.)**
2. **Violations of California's False Advertising Law (Business and Professions Code § 17500 et seq.)**
3. **Breach of Express Warranty**
4. **Breach of the Implied Warranty of Merchantability**
5. **Fraudulent**

**Misrepresentation**
6. **Negligent Misrepresentation**
7. **Violation of California Consumer Legal Remedies Act (Civ. Code § 1750, et seq.)**

**DEMAND FOR JURY TRIAL**

Plaintiff Kristen Leachty (hereinafter collectively referred to as "Plaintiff"), by and through her undersigned counsel and on behalf of herself and all others similarly situated ("the putative class", "Class members" or the "Class"), brings this Class Action against Defendant Jackson's Food Company, LLC ("Defendant" or "Jackson's"), and alleges as follows:

## INTRODUCTION

1. This case arises from Jackson's Food Company, LLC's marketing, labeling, advertising and sale of its Jackson's Avocado Oil Sweet Potato Chips (the "Product"). In particular, Defendant represents to consumers, including through the Product's explicit packaging, that Jackson's Avocado Oil Sweet Potato Chips are made or cooked with avocado oil. Defendant's representations clearly communicate that avocado oil is the oil used to make the Product, as opposed to other substitute oils.

2. These representations were not buried in individual communications. Rather, Defendant's Sweet Potato Chips packaging uniformly and expressly reads "ALWAYS WITH AVOCADO OIL" in large lettering on the front. The back similarly indicates the product contains avocado oil.

3. Those representations are material. Consumers who purchase products identified as made with avocado oil do so because they reasonably expect the product to contain authentic avocado oil and, in many cases, because they are intentionally seeking to avoid other vegetable or seed oils. Avocado oil is commonly recognized

as a premium edible oil and is valued for its nutritional properties. Because of this, consumers purchasing avocado oil and products containing avocado oil often do so because of perceived nutritional benefits that differentiate the products from those formulated with other oils, including but not limited to seed oils. Defendant's representations therefore concern an objective, verifiable characteristic and ingredient of the Product, not mere puffery.

4. Defendant's representations, however, are false – the Product is not made with avocado oil. Unbeknownst to Plaintiff and reasonable consumers, the Product is not made with authentic avocado oil, but instead made with substitute oils that consumers paid a premium to avoid.

5. In July 2026 researchers at the University of California, Davis ("UC Davis") published a peer-reviewed study that found that 89% of the avocado oil-labeled foods tested, including Defendant's Avocado Oil Sweet Potato Chips, were adulterated with cheaper oils.[1] The study also tested other chips, mayonnaise and salad dressings. The study is entitled "Authenticity of avocado and olive oils used as ingredients in commercially processed foods" and evaluated the authenticity of oils used as declared ingredients in commercially processed foods.[2] Only foods that were purportedly made with a single oil were tested.[3]

6. Researchers analyzed fatty-acid and sterol profiles against Codex Alimentarius compositional standards and used conservative criteria that accounted for natural and analytical variation (i.e. some degree of accidental adulteration). According to the researchers, "[D]eviations limited to a single fatty acid or sterol

---

[1] Amy Quinton, *That Avocado Oil Chip You're Eating May Not Be Made with Pure Avocado Oil,* UC Davis, July 15, 2026, *available at* https://www.ucdavis.edu/food/news/avocado-oil-chip-youre-eating-may-not-be-made-pure-avocado-oil.

[2] Natalie Lopez-Alvarez, Xueqi Li, Benjamin Vizgordiski, & Selina C. Wang, *Authenticity of avocado and olive oils used as ingredients in commercially processed foods*, 6 Applied Food Research 102389, 1 (2006), https://doi.org/10.1016/j.afres.2026.102389 (last accessed September 29, 2026) (hereinafter referred to as "the UC Davis Study" or "the Study").

[3] *Id.* at 2.

marker and not exceeding 10% beyond established compositional limits were not considered sufficient to classify a sample as inconsistent and were therefore considered consistent."[4]

7. UC Davis tested two separate production lots of Jackson's Avocado Oil Sweet Potato Chips. Both samples of Jackson's sweet potato chips were classified as compositionally inconsistent with authentic avocado oil. The UC Davis product list identifies those samples as Sample Nos. 21 and 22. The study also tested two lots of a separate Jackson's product, Jackson's Kettle Cooked Sea Salt Potato Chips Only with Avocado Oil, both of which were likewise inconsistent with authentic avocado oil.

8. Instead, the study revealed that Defendant's products, including the Product at issue, contained compositional profiles consistent with lower-cost refined oils, such as canola, corn, soybean and/or sunflower oil. In essence, the oil present in Jackson's Avocado Oil Sweet Potato Chips was so fundamentally different from authentic avocado oil such that it cannot be said to contain authentic avocado oil.

9. Overall, the study found that 48 of 54 avocado-oil-labeled processed food samples were compositionally inconsistent with authentic avocado oil.[5] Among purported "avocado oil" chip samples, 26 of the 28 chips sampled were inconsistent. The researchers measured fatty acids and sterols because these chemical markers provide fingerprints of oil identity. They also performed experiments to determine whether frying, blending, or emulsification could explain the deviations and concluded that typical processing conditions caused only minimal changes and would not materially alter the products. As a result, the researchers concluded there were substantial differences between labeled oil claims and measured oil

---

[4] *Id.* at 3.
[5] Amy Quinton, *That Avocado Oil Chip You're Eating May Not Be Made with Pure Avocado Oil,* UC Davis, July 15, 2026, *available at* https://www.ucdavis.edu/food/news/avocado-oil-chip-youre-eating-may-not-be-made-pure-avocado-oil.

composition in the products tested.[6] In other words, the products did not contain the oils represented.

10. Plaintiff purchased Jackson's Avocado Oil Sweet Potato Chips on July 27, 2025 through Instacart from Sprouts Farmers Market in California. Plaintiff purchased the Product in reliance on Defendant's representation concerning avocado oil. Had Plaintiff known that the Product was not made with authentic avocado oil as represented, Plaintiff would not have purchased the chips or would have paid substantially less.

11. Likewise, Plaintiff and those similarly situated Class Members relied on Defendant's misrepresentations and omissions that its Avocado Oil Sweet Potato Chips were in fact made with avocado oil when deciding to purchase the Product. As a result of Defendants' misrepresentations, Plaintiff and the Class members have suffered harm. Specifically, Plaintiff and the Class Members would not have purchased the Product or would have paid substantially less absent Defendant's misrepresentations and omissions concerning the composition of the Product. Plaintiff and the Class members have therefore suffered monetary damages as a result of Defendant's false and misleading advertising.

12. Plaintiff therefore brings claims for violation of Business and Professions Code sections 17200 and 17500, and violation of Civil Code section 1750, among other things, on behalf of herself and a proposed California Class of persons who purchased Jackson's Avocado Oil Sweet Potato Chips during the applicable limitations period.

## JURISDICTION AND VENUE

13. This Court has jurisdiction over all causes of action asserted herein pursuant to the Class Action Fairness Act ("CAFA") of 2005. Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because the aggregate

[6] Natalie Lopez-Alvarez, Xueqi Li, Benjamin Vizgordiski, & Selina C. Wang, *Authenticity of avocado and olive oils used as ingredients in commercially processed foods*, 6 Applied Food Research 102389, 8 (2006), https://doi.org/10.1016/j.afres.2026.102389 (last accessed September 29, 2026)

claims of the putative class members exceed $5 million, exclusive of interests and costs, and at least one member of the proposed classes is a citizen of a different state than Jackson's.

14. This Court has personal jurisdiction over Defendant because it purposefully directed its activities in this District, committed the wrongful acts alleged herein in California, regularly conducts business in this District, and has extensive contacts with this forum. Defendant marketed and sold its Product to Plaintiff in this District.

15. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims occurred in this District, and Jackson's regularly conducts business in this District.

## THE PARTIES

**Plaintiff Kristen Leachty**

16. Plaintiff Kristen Leachty is a citizen of the state of California, who resides in San Diego County, California. Plaintiff purchased Defendant's Avocado Oil Sweet Potato Chips on July 27, 2025 from a Sprouts Farmers Market in California through the Instacart application.

17. Before purchasing the Product, Plaintiff was exposed to and relied on Defendant's representations that the Product was made or cooked with avocado oil. Specifically, the Instacart listing shows the Product bag which explicitly states on the front in prominent letters "ALWAYS WITH AVOCADO OIL." In addition, the back of the bag also reads "AVOCADO OIL ALWAYS!" and lists only the following ingredients: "SWEET POTATOES, AVOCADO OIL, SEA SALT."

18. Based on these representations, Plaintiff reasonably believed that the Product contained avocado oil, as opposed to another oil. These representations were material to Plaintiff's purchasing decision. Plaintiff would not have purchased the Product, or would have paid less for it, had Plaintiff known that the oil used in the Product was not in fact avocado oil.

**Defendant Jackson's Food Company, LLC**

19. Defendant Jackson's Food Company, LLC at all times mentioned herein was and is a Wisconsin limited liability company, having its principal place of business in Muskego, Wisconsin. Defendant manufactures, markets, distributes and/or sells Jackson's snack products, including the Product at issue, throughout California and the United States. Defendant's website currently represents that its snacks, including its Avocado Oil Sweet Potato Chips are made with "Avocado Oil Only."

## FACTUAL BACKGROUND

**A. Defendant's Avocado Oil Representations**

20. Defendant expressly and prominently markets Jackson's chips as products made with avocado oil, including Jackson's Avocado Oil Sweet Potato Chips. The Product's packaging identifies avocado oil as the oil used in the Product in multiple locations. The front of the Product package states in large lettering in the center of the bag: "ALWAYS WITH AVOCADO OIL" such that every consumer would see this representation when purchasing the product.




Figure 1: Product packaging image taken from Defendant's website

21. The back of the Product also reinforces this representation. It again states "AVOCADO OIL ALWAYS" in all capital letters and identifies only the following ingredients: "SWEET POTATOES, AVOCADO OIL, SEA SALT." Defendant further highlights its use of avocado oils in a statement about the origin of the product, which reads in part "Jackson's has NEVER used seed oils to make our award-winning snacks." Defendant also states on the bag: "…we are on a mission to make the best snacks out there and they're always cooked in avocado oil" and "ALWAYS COOKED IN AVOCADO OIL."




Figure 2: Back of Product Packaging. Image from Defendant's website.

22. Defendant makes similar representations on its website, where it also markets its snacks as made with avocado oil. The homepage of its website features the following representations about its snacks, including the Product: "Snacks cooked in avocado oil".[7]

[7] Jackson's Home Page, https://snackjacksons.com/ (last visited September 29, 2026).




Figure 3: Image from Defendant's Website Home Page

23. Defendant clearly recognizes the premium perception and characteristics that consumers might value in avocado oil and highlights them throughout its marketing. In a page about its ingredients titled "Why Avocado Oil?", Defendant states, "Not all oils are created equal and avocado oil is in a league of its own" and "Avocado Oil Always."[8]




Figure 4: Image from Defendant's Website Home Page

[8] *Id.*

24. Elsewhere on the site, Defendant states "Crunch into something super – our avocado oil chips are kettle-cooked exclusively in premium avocado oil…"[9]




Figure 5: Image from Defendant's Website

25. Seemingly recognizing the materiality of this ingredient, Defendant's website also markets "Avocado Oil Authenticity" and claims to verify that its oil meets authenticity standards. These representations, particularly the universal statements on the Product packaging, are objective representations concerning the Product ingredients and method of preparation.

26. Notably, Defendant's representations are not qualified by language suggesting the Product may contain a blend of oils, substitute oils, or oils merely resembling avocado oil. To the contrary, Defendant repeatedly represents to reasonable consumers that the oil contained in the Product is exclusively avocado oil. In fact, UC Davis selected Jackson's Avocado Oil Sweet Potato Chips for testing in part because avocado oil was the sole declared edible oil ingredient.

27. Defendant's representations are material. A reasonable consumer understands the identity of the cooking oil used in a snack to be a meaningful characteristic of the product, particularly when the manufacturer prominently

[9] Jackson's Avocado Oil Chips, https://snackjacksons.com/collections/avocado-oil-chips (last visited September 29, 2026)

identifies avocado oil as the product's distinguishing ingredient and markets avocado oil as reason to choose the product.

28. The representation that Jackson's Sweet Potato Chips are made exclusively with avocado oil is material to reasonable consumers because the type of oil used to make a packaged food product is an ingredient and product attribute that consumers consider when deciding what foods to purchase and consume. Reasonable consumers consider the ingredients used to make a product and the perceived health, nutritional, and dietary attributes associated with those ingredients, particularly consumers purchasing foods perceived to have nutritional characteristics. Indeed, the International Food Information Council's 2024 Food & Health Survey, based on a survey of 3,000 Americans, found that 62% of consumers reported that healthfulness has an impact on their food and beverage purchasing decisions.[10] The same survey found that consumers use particular characteristics—including whether a food is fresh, a good source of protein, or low in sugar—to assess whether a food is "healthy." The 2023 IFIC Food & Health Survey also reported that consumers scrutinize food labels for attributes they associate with their health and dietary preferences.

29. The advertising and marketing of Defendant's Products as containing avocado oil is in a prominent place—front and center, in large, bolded font within a bright green banner, on the front label of the Product's packaging—demonstrates Defendant's awareness that this claim about the Products' composition is material to consumers.

30. By representing that its Product is made with avocado oil, Defendant created a price and product-quality distinction between the Product and conventional chips made with vegetable or seed oils. Plaintiff and Class Members paid more money for the Product on the basis of this representation: i.e. that it contained or was

[10] International Food Information Council, *2024 Food & Health Survey*, June 20, 2024, at 5, available at https://ific.org/wp-content/uploads/2025/07/2024-IFIC-Food-Health-Survey.pdf (last accessed September 29, 2026).

cooked with avocado oil. In fact, they did not receive the product as represented.

**B. Plaintiff's Purchase**

31. On July 27, 2025, Plaintiff purchased Jackson's Avocado Oil Sweet Potato Chips from Sprouts Farmers Market in California through the Instacart Application. She paid approximately $3.50 exclusive of tax.

32. Plaintiff purchased the Product for personal, family or household use and not for resale.

33. Plaintiff purchased Jackson's Avocado Oil Sweet Potato Chips as a healthier alternative to snack chips that are made with other oils, including but not limited to seed oils, and reasonably believed she was receiving a snack food cooked in avocado oil only.

34. In making her purchasing decision, Plaintiff reasonably relied on Defendant's misrepresentation that the Product contained avocado oil as its only oil ingredient, and would not have purchased Defendant's Product or would have paid less, but for Defendant's material omissions and misrepresentations that the Product was made with avocado oil only. Thus, Defendant's representations were material to her decision to purchase the Product.

35. Plaintiff was exposed to and relied on Defendant's avocado-oil representations in deciding whether to purchase the Product, including but not limited to the representations on the Product packaging. These representations were part of the basis of Plaintiff's bargain with Defendant and/or the retail seller and were material to Plaintiff's decision to purchase.

36. Had Plaintiff known the truth—that the oil in the Product was not compositionally consistent with authentic avocado oil and therefore did not confirm to Defendant's avocado oil representation—Plaintiff would not have purchased the Product or would have paid substantially less for it.

37. As a direct and proximate result of Defendant's conduct and false representations, Plaintiff suffered economic injury, including by paying money for

a Product that was materially different from the Product Defendant represented it to be and by paying a price premium attributable to the avocado oil representation.

**C. The UC Davis Study**

38. In July 2026, researchers at the University of California, Davis, Department of Food Science and Technology published a peer-reviewed study in *Applied Food Research* entitled “Authenticity of avocado and olive oils used as ingredients in commercially processed foods.[11] The UC Davis Study was designed to evaluate the compositional authenticity of avocado oil and olive oil when those oils were used as declared ingredients in commercially processed foods. The researchers selected products in categories including chips, mayonnaise, and salad dressings and tested two separate production lots of each product. The UC Davis team analyzed 74 products that bore labels containing solely avocado oil or olive oil as the listed oil from online retailers and California stores in 2025 and 2026.[12]

39. The researchers extracted the oils from finished foods and measured fatty-acid and sterol profiles. They compared those profiles against established compositional standards, including the Codex Alimentarius Standard for Named Vegetable Oils (CXS 210-1999).[13] The study explains that these chemical markers function as fingerprints that can be used to evaluate whether the oil is compositionally consistent with authentic avocado oil.

40. The Study used conservative classification criteria. It accounted for analytical uncertainty, biological variability, and processing efforts. Minor deviations limited to a single market and not exceeding 10% beyond established compositional limits were not sufficient standing alone, to classify a sample as inconsistent.[14] Only samples showing multiple deviations or patterns inconsistent

[11] Natalie Lopez-Alvarez, Xueqi Li, Benjamin Vizgordiski, & Selina C. Wang, *Authenticity of avocado and olive oils used as ingredients in commercially processed foods*, 6 Applied Food Research 102389, 1 (2006), https://doi.org/10.1016/j.afres.2026.102389 (last accessed September 29, 2026).
[12] *Id.* at 1-2.
[13] *Id.* at 3.
[14] *Id.* at 3.

with authentic reference profiles were classified as inconsistent.[15] This procedure allowed for some natural deviations and unintended contamination during the manufacturing process, among other things.

41. The UC Davis researchers also tested whether typical food-processing conditions could materially alter the chemical markers used to identify authentic avocado oil. Their model-product experiments found that frying and emulsification caused only minor shifts in the relevant markers and did not substantially alter oil authenticity markers.[16]

42. The Study found that 48 of 54 avocado-oil-labeled processed-food samples were compositionally inconsistent with authentic avocado oil. Among avocado-oil-labeled chip samples, 26 of 28 were classified as inconsistent. Most importantly for this action, UC Davis tested two separate lots of Jackson's Avocado Oil Sweet Potato Chips. The UC Davis product list identifies the two Jackson's sweet-potato-chip samples as Sample Nos. 21 and 22. Neither sample is marked as compositionally consistent with authentic avocado oil; both were classified as inconsistent.[17]

43. The UC Davis product list separately identifies two lots of Jackson's Kettle Cooked Sea Salt Potato Chips Only with Avocado Oil as Sample Nos. 23 and 24, and both of those samples were likewise inconsistent with authentic avocado oil. Although those kettle chips are not the Product purchased by Plaintiff, their results provide additional evidence concerning the authenticity of Jackson's avocado-oil representations and the Company's products.[18]

44. The Study's testing of two independent lots of the same Jackson's sweet-potato product, both of which were compositionally inconsistent with

---

[15] *Id.*
[16] *Id.* at 8.
[17] Amy Quinton, *That Avocado Oil Chip You're Eating May Not Be Made with Pure Avocado Oil,* UC Davis, July 15, 2026, *available at* https://www.ucdavis.edu/food/news/avocado-oil-chip-youre-eating-may-not-be-made-pure-avocado-oil.
[18] *Id.*

authentic avocado oil, is substantial evidence that Defendant's avocado-oil representation was false or misleading during the relevant period and supports class-wide discovery into Defendant's sourcing, testing, quality-control, and manufacturing practices.

45. As to fatty acids, "[l]ow levels of palmitic acid (C16:0) and palmitoleic acid (C16:1), together with elevated stearic acid (C18:0), are not characteristic of authentic avocado oil. Rather, this pattern is more consistent with substitution or dilution using vegetable oils."[19] In addition, as to sterol composition, "[m]ost samples had campesterol, stigmasterol and Δ7-avenasterol levels outside the Codex standard ranges" and elevated ranges of these sterols "are consistent with substitution or dilution with vegetable oils."[20] At bottom, the "sterol deviations support the fatty acid findings and indicate widespread compositional inconsistency among the avocado oil-labeled products evaluated."[21]

46. Ultimately, the researchers concluded that both samples of Jackson's Avocado Oil Sweet Potato Chips were inconsistent with authentic avocado oil. Overall, the researchers also concluded that 93% of chip samples, 71% of mayonnaises and 100% of salad dressings labeled as containing avocado oil were adulterated with undisclosed oils.[22]

47. "In contrast, 90% of olive oil-labeled chip products and 100% of olive oil-labeled salad dressings and mayonnaise were classified as consistent with authentic olive oil. Overall the rate of inconsistent observed for avocado oil-labeled products was substantially higher than that observed for olive oil-labeled products."[23] "…[T]his may also reflect the comparatively higher compliance and

---

[19] Natalie Lopez-Alvarez, Xueqi Li, Benjamin Vizgordiski, & Selina C. Wang, *Authenticity of avocado and olive oils used as ingredients in commercially processed foods*, 6 Applied Food Research 102389, 4 (2006), https://doi.org/10.1016/j.afres.2026.102389 (last accessed September 29, 2026).

[20] *Id.*

[21] *Id.* at 3.

[22] *Id.* at 3.

[23] *Id.* at 3-4.

authenticity of oil olive sources relative to avocado oil, as olive oil standards are more established and regulatory oversight and enforcement are considerably more developed than for avocado oil."[24]

48. Plainly, the UC Davis Study illustrates the serious problem that Defendant's adulterated oil products create for consumers who reasonably rely on product labels in making their purchasing decisions:

> All products included in the study declared only a single edible oil in the ingredient statement and did not disclose blended oil formulations. Thus, consumers would reasonably expect the named oil, particularly when emphasized through front-of-package claims such as 'made with 100% avocado oil' to be the primary lipid source of the product.

49. Jonathan Rubin, founder and CEO of the Seed Oil Free Alliance, a third-party certifying organization that uses independent laboratory testing to verify oil authenticity, agreed: "A front-of-package claim is a promise. It is not evidence by itself. Most companies we work with use avocado oil to meet a real consumer preference. The problem is when suppliers fail to test for seed oil adulteration, and the brand is still the one standing behind the claim."[25] "Consumers are right to be angry when a premium claim is not supported by the ingredients sourced. If a package says 100% avocado oil or made with avocado oil, consumers should not need a chemistry lab to know whether that statement is true."[26]

50. The economics of Defendant's deception is clear: "Pure avocado oil costs between $4 and $5 per pound" whereas "[s]eed oils, including sunflower, soybean, and corn oil, cost between $0.50 and $1.50 per pound. For a food manufacturer producing chips at scale, the incentive to cut avocado oil with cheaper

---

[24] *Id.* at 4.

[25] *New UC Davis Study Shows Why "Made With Avocado Oil" Claims Need Testing*, Seed Oil Free Alliance, July 15, 2026, https://www.seedoilfreecertified.com/seed-oils-guide/oil-quality-and-fraud/uc-davis-2026-study-avocado-oil-adulteration (last accessed September 29, 2026).

[26] *Id.*

seed oils is enormous. The label does not change. The margin does."[27]

**D. Defendant's Knowledge and Quality Control Responsibilities**

51. Defendant is the manufacturer and marketer of the Product and is responsible for the accuracy of its ingredient representations. Defendant controls, or has access to, information concerning its suppliers, ingredient specifications, certificates of analysis, incoming-ingredient testing, production records, quality-control procedures, and finished product testing.

52. Defendant claims that every batch of avocado oil used is tested and must meet certain standards before use. Defendant further claims on its website that "if a batch ever does not meet our expectations, it will be rejected on the spot – no waiting days or weeks for test results."[28]

53. Therefore, Defendant either knew or should have known whether the oil it purchased and used in its products was authentic avocado oil. Defendant could have required supplier specifications, certificates of analysis, independent authenticity testing, or other quality-control measures sufficient to verify the identity of the oil used in the Product.

**E. Economic Injury and Materiality**

54. Consumers purchase Jackson's Avocado Oil Sweet Potato Chips because of its represented ingredients and characteristics, including the identity of the oil used to cook the chips. A reasonable consumer would consider whether a product is made with avocado oil material to the purchase decision when the manufacturer prominently advertises avocado oil and identifies it as the Product's distinguishing ingredient.

---

[27] *Your "Avocado Oil" Chips Are Almost Certainly Made With Seed Oils. A UC Davis Study Just Proved It, Animal Base*, August 10, 2026, https://animalbase.com/knowledge-base/news/your-avocado-oil-chips-are-almost-certainly-made-with-seed-oils-a-uc-davis-study-just-proved-it (last accessed September 29, 2026).

[28] Jackson's Our Commitment to You, https://snackjacksons.com/pages/our-commitment-to-you (last visited September 29, 2026).

55. Plaintiff and Class Members were deprived of the benefit of the bargain. They paid money for a product represented as containing authentic avocado oil but received a product whose oil was not compositionally consistent with authentic avocado oil.

56. Plaintiff and the Class members reasonably relied to their detriment on Defendant's misleading representations and omissions.

57. Plaintiff and Class Members would not have purchased the Product, or would have paid less for it, had Defendant accurately disclosed the composition of the oil used in its "Avocado Oil Sweet Potato Chips." The amount of economic injury may be measured by, among other methods, the difference between the value of the Product as represented and the value of the Product as actually sold, the price premium attributable to the avocado-oil representation, or another legally permissible measure.

58. In making the false, misleading and deceptive misrepresentations and omissions described herein, Defendant knew and intended that consumers would purchase Jackson's Avocado Oil Sweet Potato Chips advertised as containing avocado oil over comparable snacking chips that are not advertised as containing avocado oil only, and instead, as containing other oils.

59. As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representations and omissions, Defendant injured Plaintiff and the Class members in that the Class: (a) paid a sum of money for Product that was not what Defendant represented; (b) were deprived of the benefit of the bargain because the Product they purchased was different from what Defendant warranted; and (c) were deprived of the benefit of the bargain because the Product they purchased had less value than what Defendant represented.

60. Had Defendant not made the false, misleading and deceptive representations and omissions alleged herein, Plaintiff and the Class members would not have purchased the Product at all, or would have paid substantially less.

61. Plaintiff and the Class members have therefore suffered and continue to suffer economic losses. Furthermore, as a direct and proximate result of Defendant's wrongful conduct, Plaintiff and the Class members have suffered injury in fact and lost money or property.

**CLASS ALLEGATIONS**

62. Pursuant to the Rule 23 of the Federal Rules of Civil Procedure, and as further described below, Plaintiff brings this class action lawsuit on behalf of herself, and members of the proposed Class (the "Class") defined as follows:

> All persons who, during the applicable statute of limitations, purchased Jackson's Avocado Oil Sweet Potato Chips in California for personal, family or household use and not for resale or distribution.

63. Excluded from the Class are: (1) the agents, affiliates, legal representatives, heirs, attorneys at law, attorneys in fact, or assigns of such the defendant described herein; (2) any Judge(s) assigned to this case, their staff and; any members of their immediate families; (3) any insurers claiming under rights of subrogation; (4) Defendant's counsel; (5) government entities and/or agencies; (6) Plaintiff's counsel; and (7) Defendant and any entities in which they have a controlling interest, any of their parents, subsidiaries, affiliates, officers, directors, employees and members of such persons' immediate families.

64. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action individually, on behalf of the general public, and on behalf of all individuals similarly situated. Plaintiff reserves the right to amend this Complaint for such Class.

65. This action has been brought and may be maintained as a class action pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure because there is a well-defined community of interests in the litigation and the proposed class is easily identified. This class action may also be properly maintained as a class action because the proposed class is ascertainable. As further set forth below, this

class action meets the statutory prerequisites for the maintenance of a class action, including as set forth in Federal Rules of Civil Procedure, Rule 23.

66. **Numerosity:** The Class is so numerous that joinder of all members is impractical. Defendant sold Avocado Oil Sweet Potato Chips to California consumers from potentially as far back as 2022 to the present. Upon information and belief, Plaintiff estimates there are thousands of members of the class. While the precise number of Class members is presently unknown to Plaintiff, this information can be ascertained through discovery because Defendant has the administrative capability, through business records, to identify members of the proposed Class.

67. **Common Questions of Fact and Law:** Common questions of law and fact exist as to all members of the Class and predominate over any individual questions. Some of the questions of law and fact common to Class members include, but are not limited to, the following:

a. Whether Defendant engaged in the conduct alleged herein;

b. Whether Defendant uniformly misrepresented, including through standardized statements on its Product packaging, that its Avocado Oil Sweet Potato Chips contained avocado oil;

c. Whether Defendant promised, through their standardized Product packaging, to provide a Product containing avocado oil;

d. Whether Defendant's Avocado Oil Sweet Potato Chips were made with avocado oil;

e. Whether Defendant marketed and/or sold products that were based on false and/or misleading information;

f. Whether Defendant's representations were material;

g. Whether Defendant's conduct violates the Business and Professions Code, and other laws as asserted herein;

h. Whether Plaintiff and the other Class members overpaid for Defendant's Avocado Oil Sweet Potato Chips; and

i. Whether Plaintiff and the other Class members are entitled to equitable relief, including, but not limited to, restitution or injunctive relief.

68. As noted above, Defendant's knowledge as to its Avocado Oil Sweet Potato Chips and the authenticity of its avocado oil, is a common question of fact relevant to class certification. Defendant's knowledge of this information is also relevant to ascertainability, the Class definition and Plaintiff's ability to show classwide relief as to a specific period.

69. **Typicality:** Plaintiff's claims are typical of the claims of the members of the Class in that Plaintiff (like members of the putative Class) was affected by Jackson's misrepresentations, concealment, and nondisclosures. Plaintiff and each Class member seek restitution and/or disgorgement of the money spent to purchase the Product, which they would not have paid for or would have paid substantially less for if they had known of the true facts surrounding the Defendant's Avocado Oil Sweet Potato Chips. Plaintiff and the Class members have been injured by the same wrongful business practices committed by Defendant. Plaintiff's claims arise from the same practices or course of conduct that gives rise to the claims of all Class members.

70. **Adequacy:** Plaintiff will fairly and adequately protect the interests of the Class members. Plaintiff purchased Jackson's Avocado Oil Sweet Potato Chips during the same general period of time as the Class members. Plaintiff is therefore familiar with the basic facts that form the basis of the Class members' claims. Plaintiff is an adequate representative of the Class in that she has no interests which are adverse to or conflict with those of the Class members that Plaintiff seeks to represent. Plaintiff has also retained counsel with substantial experience and success in the prosecution of complex class actions of a similarly nature.

71. **Predominance & Superiority**: Common questions of fact or law concerning Defendant's liability to all Class members predominate over any

questions affecting only individual Class members. A class action is superior to any other available method for the fair and efficient group-wide adjudication of this controversy since individual joinder of all Class members is impracticable. Furthermore, the expenses and burden of individual litigation would make it difficult or impossible for individual members of the Class to redress the wrongs done to them, especially given that the damages or injuries suffered by each individual member of the Class may be relatively small. Even if the Class members could afford individualized litigation, the cost to the court system would be substantial and individual actions would also present the potential for inconsistent or contradictory judgments. By contrast, a class action presents fewer management difficulties and provides the benefits of single adjudication and comprehensive supervision by a single court and is manageable based on the use of common evidence and a core number of representations and/or omissions of material fact at issue.

72. **Injunctive or Declaratory Relief**: Plaintiff satisfies the requirements for maintaining a class action under Rule 23(b)(2). Defendant has acted or refused to act on grounds generally applicable to the Class, making class-wide injunctive and/or declaratory relief appropriate under Rule 23(b)(2).

73. **Particular Issues**: Plaintiff satisfies the requirements for maintaining a class action under Rule 23(c)(4). Plaintiff's claims consist of particular issues that are common to all members of the Class and are capable of class-wide resolution that will significantly advance the litigation. Therefore, to the extent appropriate, the Court may certify particular issues under Rule 23(c)(4).

## FIRST CAUSE OF ACTION
## UNFAIR BUSINESS PRACTICES (Bus. & Prof. Code § 17200)
## (On Behalf of Plaintiff and All Others Similarly Situated Against Defendant)

74. Plaintiff re-alleges and incorporates by reference herein each and every allegation contained herein as though fully set forth and brought in this cause of action.

75. California's Unfair Competition Law ("UCL") "prohibits, and provides civil remedies for, unfair competition, which it defines as 'any unlawful, unfair or fraudulent business act or practice.'" (Bus. & Prof. Code, § 17200; *Kwisket Corp. v. Superior Court* (2011) 51 Cal.4th 310 320.) The Legislature intended this language to be sweeping and empowered courts with broad equitable powers to remedy violations. (*Kwisket*, *supra*, 51 Cal.4th at p. 320.) In fact, the statute has been found to prohibit "wrongful business conduct in whatever context such activity might occur." (*Massachusetts Mutual Life Ins. Co. v. Superior Court* (2002) 97 Cal.App.4th 1282, 1288.)

76. Under this framework, a plaintiff may bring suit where he or she has suffered injury in fact and has lost money or property as a result of unfair competition. "There are innumerable ways in which economic injury from unfair competition may be shown. A plaintiff may (1) surrender in a transaction more, or acquire in a transaction less, than he or she otherwise would have; (2) have a present or future property interested diminished; (3) be deprived of money or property to which he or she has a cognizable claim; or (4) be required to enter into a transaction, costing money or property, that would otherwise have been unnecessary.") (*Id.* at p. 323.) California courts have repeatedly held that a plaintiff loses money or property within the meaning of the UCL where they are deceived into spending money to purchase a product or service that they otherwise would not have purchased. (*Kwikset Corp.*, *supra*, 51 Cal.4th at p. 317.)

77. In *Kwikset*, for example, defendants misrepresented and sold locksets labeled as "Made in U.S.A." that contained foreign-made parts and involved foreign manufacturing. (*Id.* at p. 317, 327) The *Kwikset* Plaintiffs satisfied the injury requirement because they alleged the representations were false and that they would not have bought the locksets otherwise. (*Id.* at p. 327-328 [noting that "[w]hether a diamond is conflict free may matter to the fiancée who wishes not to think of supporting bloodshed and human rights violations"].) When a consumer is deceived

by a misrepresentation into making a purchase, the economic harm is the same: the consumer has purchased a product that he or she paid more for than he or she otherwise would have paid had the defendant told the truth about the product or service. "This economic harm – the loss of real dollars from a consumer's pocket – is the same whether or not a court might objectively view the products as functionally equivalent." (*Kwikset Corp.*, *supra*, 51 Cal.4th at p. 329.)

78. Beginning at an exact date unknown to Plaintiff but starting potentially as far back as 2022, Defendant committed and continues to commit acts of unfair competition as defined by the UCL. As further alleged herein, Defendant misrepresented that its Product always contained avocado oil when it did not. Defendant further concealed, omitted, and failed to disclose to the Class and the public that its Product did not contain authentic avocado oil.

79. Among other things, Defendant represented that: (a) its Product is always made with avocado oil; (b) its Product contained sweet potatoes, avocado oil and sea salt only; (c) it never used seed oils in the making of its Product; and (d) the Product is "ALWAYS COOKED IN AVOCADO OIL".

80. Plaintiff and the Class have suffered injury in fact and lost money as a result of Defendant's unfair, fraudulent and unlawful business practices. Specifically, Plaintiff and the Class paid more for the Product than they otherwise would have had Defendant not misrepresented the Product and/or disclosed that the Product was not always made with avocado oil and/or contained other oils.

81. As in *Kwikset*, the extra money paid by Plaintiff and the Class, is economic injury and affords the Class standing to sue. (*Kwikset Corp.*, *supra*, 51 Cal.4th at p. 330.) To deny standing to consumers who have been deceived by Defendant would place other food manufacturers that do not engage in such a deceitful practice at a competitive disadvantage and encourage the marketplace to dispense with its duties to be truthful in their marketing practices. (*Id.* at p. 331.)

82. For Plaintiff and the Class, the use of avocado oil (as opposed to other

oils) was an essential feature of Defendant's chips. The use of avocado is associated with certain nutritional benefits and is perceived as a premium ingredient. Without authentic avocado oil, Defendant's Product is worth significantly less. Accordingly, Plaintiff and the Class would not have paid the premium they paid for the Product had they known the chips were not as represented.

83. As in *Kwikset*, where the manufacturer misrepresented the origin of their products, Defendant misrepresented (through uniform affirmative misrepresentations and concealment of material information) the ingredients in the Product they sold to the Class. As a result, Plaintiff and the Class substantially overpaid for the Product.

84. Defendant's misrepresentations and omissions were material to the Class, Defendant had a duty to disclose said information, Defendant failed to disclose, and as a result, the Class paid for chips, or paid more for chips from Defendant that they otherwise would not have paid if they had known the truth.

85. Defendant is a person within the meaning of Business and Professions Code section 17201. As a result of Defendant's violations of the Unfair Competition Law, Plaintiff and the Class members have lost money or property, including but not limited to the money paid to Defendant Jackson's for its Avocado Oil Sweet Potato Chips. Defendant has engaged in unlawful, unfair, and deceptive business practices by enticing and encouraging consumers to purchase its chips based on misrepresentations regarding the characteristics, ingredients, benefits, and nature of its Product. The unlawful, unfair, and deceptive business practices also included failing to inform consumers that it's Product did not always contain avocado oil and/or that it may contain other oils, while falsely representing that it contained only avocado oil. Plaintiff is informed and believes, and on that basis alleges, that Defendant engaged in unlawful, unfair, and deceptive business practices in order to charge a premium for its Product over other snack manufacturers.

86. Plaintiff is informed and believes that Defendant engaged in a scheme,

arrangement, or plan to actively conceal the truth about its Product. Plaintiff is informed and believes, and based thereon alleges, that Defendant actively misrepresented and concealed this information, such that Defendant would be insulated from public scrutiny and/or recourse from current/former customers, in order to perpetuate Defendant financially.

87. As specifically alleged herein, Defendant's conduct constitutes "unlawful" business acts and practices within the meaning of Cal. Bus. & Prof. Code § 17200 in that such conduct violates the California Consumer Legal Remedies Act ("CLRA") (Cal. Civ. Code §§ 1750, et seq.) and constitutes breach of express warranty. Plaintiff and the Class are within the class of persons that the CLRA was intended to protect because they are consumers of Defendant. Had Defendant complied with the CLRA, Plaintiff and the Class would have known the truth regarding Defendant's chip Product.

88. Plaintiff does not seek to impose a labeling requirement different from federal law. Rather, Plaintiff seeks to prevent Defendant from making materially false or misleading affirmative representations about the identity and composition of the oil in its Product.

89. Defendant's acts and practices constitute "unfair" business acts and practices within the meaning of Cal. Bus. & Prof. Code § 17200. Defendant's acts and practices, as alleged herein, constitute fraudulent misrepresentation and fraud by omission and further threaten a continued violation of laws. Because Defendant made affirmative misrepresentations and had a duty to disclose material information regarding its Product, the acts of misrepresentation and concealment are, by definition, violations of Cal. Bus. & Prof. Code § 17200. Furthermore, Defendant's acts and practice of charging premium prices for its Product to Plaintiff and the Class while failing to disclose the truth about its Product and misrepresenting its characteristics is immoral, unethical, oppressive, unscrupulous, and injurious to consumers. The harm to Plaintiff and members of the general public substantially

outweighs any benefits of Defendant's conduct. Consequently, Defendant's acts and practices constitute "unfair" business acts and practices within the meaning of Cal. Bus. & Prof. Code § 17200.

90. Defendant's acts and practices as detailed above, which include Defendant's misrepresentations, concealment and omissions of material information to Plaintiff and the Class, are likely to deceive, and did deceive, Plaintiff and members of the general public and, consequently, constitute "fraudulent" business acts and practices within the meaning of Cal. Bus. & Prof. Code § 17200. A reasonable consumer would understand Defendant's representations to mean that the oil used in the Product is authentic avocado oil. Plaintiff and the Class members were actually exposed to the representation and relied upon it in purchasing the Product because the representation is material.

91. By engaging in unlawful, unfair, and deceptive business practices, Defendant benefitted financially to the detriment of consumers, Plaintiff, class members, and Jackson's competitors, who had to comply with the law.

92. Unless restrained, Defendant will continue to engage in the unfair acts and business practices described above, resulting in great and irreparable harm to Plaintiff and/or other similarly situated participants and members. Defendant continues to sell its Product, continues to represent that it is made with avocado oil and continues to charge current consumers. In doing so, Defendant continues to perpetuate the false representation that its Product is always made with authentic avocado oil when it is not.

93. Plaintiff, on behalf of herself and all others similarly situated, seeks restitution for all amounts improperly obtained by Defendant through the use of the above-mentioned unlawful business practices, as well as the disgorgement of all ill-gotten gains and restitution on behalf of Plaintiff and all other similarly consumers who were subject to the fraudulent, illegal and unfair business practices of Defendant.

94. Pursuant to section 17203 of the California Business and Professions Code and available equitable powers, Plaintiff is entitled to a preliminary and permanent injunction, enjoining Defendants from continuing the unlawful and unfair business practices described above.

95. Plaintiff is entitled to recover reasonable attorneys' fees pursuant to the California Business and Professions Code and section 1021.5 of the California Code of Civil Procedure.

96. The acts of Defendant, as alleged herein, were malicious and oppressive and justify the imposition of substantial exemplary damages.

97. Plaintiff and the Class members purchased Defendant's Product in reliance on Defendant's misrepresentations, omissions and concealment. Had Plaintiff known the Product did not in fact contain avocado oil, they would not have paid for the Product or would have paid substantially less.

98. As a direct and proximate result of Defendant's false and misleading representations, Plaintiff and the Class Members have lost money, suffered personal injury, and suffered damages in that they paid for a product they otherwise would not have purchased or paid more than they otherwise would have. Plaintiff further alleges that, as a direct and proximate result of Defendant's false and misleading representations as alleged herein, Defendant has obtained a monetary benefit from Plaintiff and the Class. As such, Defendant has been unjustly enriched at the expense of Plaintiff and the Class.

99. The UCL is an equitable statute under which plaintiffs are generally entitled to injunctive relief and restitution. The UCL does not provide for the recovery of damages. (*Cal-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 179.)

100. Restitution under the UCL is for deterrence and restoration of property acquired unlawfully. (*Krueger v. Wyeth* (S.D. Cal. 2019) 396 F.Supp.3d, 931, 950-951.) "Restitution has two purposes: 'to restore the defrauded party to the position

he would have had absent the fraud,' and 'to deny the fraudulent party any benefits, whether or not for[e]seeable, which derive from his wrongful act.'" (*Id.* at 951.) "Although the 'price less value received' method is commonly employed, it is not the *only* measure of restitution." (*Ibid.*)

101. In restitution cases under the UCL, the core claim is that plaintiffs bought an overpriced product or service – i.e. that they wouldn't have paid what they did, or made the purchase at all, if the representations had been accurate. There is an automatic financial injury that can be valued by calculating the difference between the value of what Class members and Plaintiff paid (i.e. the price of the chips purchased) and the value of what they received. In other words, restitution can be measured by the difference between what the plaintiff paid and the value of what the plaintiff received.

102. As alleged herein, Plaintiff and the Class seek restitution because they overpaid for the chip Product from Jackson's.

103. Plaintiff requests that this Court enter such orders and judgments as may be necessary to enjoin Defendant from continuing its unfair, unlawful, and/or deceptive practices, to restore to Plaintiff and the Class members any money Defendant obtained by unfair competition, including restitution and/or restitutionary disgorgement, and for such other relief set forth below or that the Court deems proper.

**SECOND CAUSE OF ACTION**

**VIOLATIONS OF CALIFORNIA'S FALSE ADVERTISING LAW**

**(Bus. & Prof. Code § 17500 et seq)**

**(On Behalf of Plaintiff and All Others Similarly Situated Against Defendant)**

104. Plaintiff re-alleges and incorporates by reference herein each and every allegation contained herein as though fully set forth and brought in this cause of action.

105. At all times relevant hereto, Defendant was and is a "person" as defined by Cal. Bus. & Prof. Code § 17506.

106. California Business and Professions Code section 17500 provides:

> "It is unlawful for any person, firm, corporation or associate . . . with intent directly or indirectly to dispose of real or personal property . . . or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated from this state before the public in any state, in any newspaper or other publication, or any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading, and which is known or which by the exercise of reasonable care should be known to be untrue or misleading, or for any person, firm, or corporation to so make or disseminate or cause to be so made or disseminated any such statement as part of a plan or scheme with the intent not to sell that personal property . . . so advertised at the price stated therein, or as so advertised." (Bus. & Prof. Code § 17500.)

107. Through the acts and practices described herein, Defendant caused to be made or disseminated throughout California statements that are untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Defendant, to be untrue and misleading to consumers and Plaintiff.

108. Defendant made, disseminated or caused to be disseminated these untrue and misleading statements, with the intent of inducing the public to purchase its Product. Among other things, Defendant disseminated or caused to be disseminated representations that the Product was made or cooked with avocado oil, including through the Product's packaging and Defendant's advertising and online marketing.

109. Defendants made representations and/or disseminated representations regarding its Products characteristics with the intent not to provide the Product as advertised.

110. Those representations were materially false or misleading because, as indicated by the UC Davis Study, multiple batches of Jackson's Avocado Oil Sweet Potato Chips were found compositionally inconsistent with authentic avocado oil.

111. Defendant knew or should have known that the representations were false or misleading because Defendant is responsible for the Product's composition, formulation and ingredient sourcing and could reasonably verify the identity of the oil used. These representations were made for the purpose of inducing California consumers to purchase the Product and were material to Plaintiff's and Class members' purchasing decisions.

112. Plaintiff and the Class members paid for Defendant's Product in reliance on Defendant's misrepresentations. Had Plaintiff known the true nature of the Product, they would not have paid for the Product or would have paid substantially less.

113. As a direct and proximate result of Defendant's false and misleading representations, Plaintiff and the Class have lost money, suffered personal injury, and suffered damages in that they paid for a Product they otherwise would not have purchased or paid more for a Product than they otherwise would have. Plaintiff further alleges that, as a direct and proximate result of Defendant's false and misleading advertising as alleged herein, Defendant has obtained a monetary benefit from Plaintiff and the Class. As such, Defendant has been unjustly enriched at the expense of Plaintiff and the Class.

114. Plaintiff requests that this Court enter such orders and judgments as may be necessary to enjoin Defendant from continuing its unfair, unlawful, and/or deceptive practices, to restore to Plaintiff and the Class members any money Defendant obtained by unfair competition, including restitution and/or restitutionary disgorgement, and for such other relief set forth below or that the Court deems proper.

**<u>THIRD CAUSE OF ACTION</u>**
**BREACH OF EXPRESS WARRANTY**
**Cal. Comm. Code §§ 2313, et seq.**
**(On Behalf of Plaintiff and All Others Similarly Situated Against Defendant)**

115. Plaintiff re-alleges and incorporates by reference herein each and every

allegation contained herein as though fully set forth and brought in this cause of action.

116. Defendant is a seller and manufacturer of Jackson's Avocado Oil Sweet Potato Chips and the Product is a good within the meaning of the California Commercial Code.

117. Defendant made a promise that the Product was always made or cooked with avocado oil. Defendant further made express affirmations of fact and descriptions concerning the Product's oil composition, including that only avocado oil (as opposed to other oils) was used in the Product. These representations became part of the basis of the bargain.

118. Plaintiff and Class members purchased the Product on the basis of Defendant's express representations and were entitled to receive a Product conforming to those representations.

119. The Product was not as promised. The Product did not conform to the express warranty because the oil in the Jackson's potato chips was compositionally inconsistent with avocado oil, as confirmed and tested in the UC Davis study.

120. Plaintiff took reasonable steps to notify Defendant within a reasonable time that the Product was not as represented. On September 29 and 30, 2026, Plaintiff sent pre-suit warranty notices to Defendant pursuant to California Commercial Code section 2607(3)(A).

121. Defendant has failed to repair or otherwise remedy the Product.

122. As a direct and proximate result of Defendant's breach, Plaintiff and Class members have suffered damages, including the difference between the value of the Product as warranted and sold, the price premium attributable to the express warranty, and/or the purchase price to the extent permitted by law. Accordingly, Plaintiff and Class members have suffered harm and the failure of Defendant's Product to be as represented was a substantial factor in causing harm.

**FOURTH CAUSE OF ACTION**
**BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY**
**Cal. Civ. Code §§ 1792, et seq.; Cal. Com. Code § 2314**
**(On Behalf of Plaintiff and All Others Similarly Situated Against Defendant)**

123. Plaintiff re-alleges and incorporates by reference herein each and every allegation contained herein as though fully set forth and brought in this cause of action.

124. The Product is a consumer good sold at retail in California. Under California's Song Beverly Consumer Warranty Act, a retail sale of consumer goods is accompanied, unless properly disclaimed, by the manufacturer's implied warranty that the goods are merchantable.

125. The implied warranty requires, among other things, that the goods conform to the promises or affirmations of fact made on the container or label and be of the kind, quality, and quantity reasonably expected under the contract description.

126. Plaintiff and the Class are consumers and bought the Product—a consumer good—manufactured by Defendant. At the time of their purchases, Defendant was in the business of selling chips and snacks to retail buyers selling grocery or food items.

127. The Product Defendant manufactured did not measure up to the promises or facts stated on the container or packaging. Defendant breached the implied warranty because the Product did not conform to the avocado oil representation appearing on the Product and used in Defendant's marketing. Plaintiff and Class Members suffered economic damages as a direct and proximate result of the breach.

128. As alleged herein, Plaintiff and the Class members were harmed. Defendant's breach of the implied warranty was a substantial factor in causing Plaintiff's and Class members' harm.

129. Plaintiff took reasonable steps to notify Defendant within a reasonable

time that the Product did not have the quality that a buyer would reasonably expect. On September 29 and 30, 2026, Plaintiff sent pre-suit warranty notices to Defendant pursuant to California Commercial Code section 2607(3)(A).

130. Plaintiff pleads this claim under the Song-Beverly Act and applicable provisions of the California Commercial Code to the extent applicable.

## <u>FIFTH CAUSE OF ACTION</u>
## FRAUDULENT MISREPRESENTATION
### (On Behalf of Plaintiff and All Others Similarly Situated Against Defendant)

131. Plaintiff re-alleges and incorporates by reference herein each and every allegation contained herein as though fully set forth and brought in this cause of action.

132. As alleged herein, Defendant made false representations that harmed Plaintiff and the Class members. Defendants represented that: (a) its Product is always made with avocado oil; (b) its Product contained sweet potatoes, avocado oil and sea salt only; and/or (c) it never used seed oils in the making of its Product; and (d) the Product is "ALWAYS COOKED IN AVOCADO OIL".

133. Defendant's representations were false and Defendant knew that the representations alleged herein were false when it made them and/or it made said representations recklessly without regard for their truth. At the time Jackson's made these representations, Defendant knew, or was reckless in not knowing, whether its Product actually contained avocado oil as represented. Defendant had superior knowledge concerning its Product, the ingredients and the manufacturing process.

134. Defendant intended that Plaintiff and the Class rely on the representation in deciding whether to purchase the Product. Defendant knew that the use of avocado oil, widely considered a premium ingredient/oil, was a material representation that affected consumers' assessments of the Product and their decision to purchase it instead of another Product, or at all.

135. Plaintiff and the Class reasonably relied on Defendant's representations.

136. As a direct and proximate result, Plaintiff and the Class were harmed in that they have paid money for Defendant's Product that does not contain authentic avocado oil as represented.

137. Plaintiff's and the Class members' reliance on Defendant's misrepresentations was a substantial factor in causing the harm suffered by Plaintiff and the Class.

138. Defendant's conduct was intentional, malicious, oppressive, and/or fraudulent, entitling Plaintiff to punitive damages to the extent permitted by law.

**SIXTH CAUSE OF ACTION**
**NEGLIGENT MISREPRESENTATION**
**(On Behalf of Plaintiff and All Others Similarly Situated Against Defendant)**

139. Plaintiff re-alleges and incorporates by reference herein each and every allegation contained herein as though fully set forth and brought in this cause of action.

140. As alleged herein, Defendant represented that: (a) its Product is always made with avocado oil; (b) its Product contained sweet potatoes, avocado oil and sea salt only; and/or (c) it never used seed oils in the making of its Product; and (d) the Product is "ALWAYS COOKED IN AVOCADO OIL". These representations were not true.

141. In the alterative to fraudulent misrepresentation, Plaintiff and the Class allege that although Defendant may have honestly believed that its representations were true, Defendant had no reasonable grounds for believing its representations were true when made. Defendant supplied information about its Product without reasonable grounds for believing it was accurate and complete.

142. Defendant intended that Plaintiff and the Class rely on its representations when purchasing Defendant's snack Product. Because the representations were material and essential to the enrollment decisions, Plaintiff and the Class did in fact reasonably rely on Defendant's representations. Plaintiff's and the Class members' reliance on Defendant's representations was a substantial factor

in causing their harm.

143. As a result of Defendant's conduct, Plaintiff and the Class purchased Defendant's snack Product and were harmed by the price they paid for said Product. As a result of Defendant's representations, Jackson's was able to, and did, charge a price it otherwise would not have been able to charge but for its representations and omissions.

144. As a direct and proximate result of Defendant's conduct, individually, jointly, and/or severally, Plaintiff and the Class sustained harm including but not limited to, overpaying for Jackson's Product, among other things. Defendant's conduct, as alleged herein, was a substantial factor in causing Plaintiff's and the Class members' injuries.

## SEVENTH CAUSE OF ACTION
## VIOLATION OF CALIFORNIA CONSUMER LEGAL REMEDIES ACT
## (Cal. Civ. Code § 1750, et seq.)
## (On Behalf of Plaintiff and All Others Similarly Situated Against Defendant)

145. Plaintiff re-alleges and incorporates by reference herein each and every allegation contained herein as though fully set forth and brought in this cause of action.

146. This cause of action is brought pursuant to the Consumer Legal Remedies Act ("CLRA") (Cal. Civ. Code § 1770, et seq.). The acts, practices, and omissions described herein were intended to result in the sale of goods to the consuming public. These acts, practices, and omissions violated and continue to violate the CLRA in that they constitute unlawful methods of competition, and unfair or deceptive acts undertaken in a transaction which resulted in the sale of goods to consumers. Such acts and practices include, but are in no way limited to, representing that goods and services had sponsorship, approval, characteristics, benefits, uses, ingredients, or quantities which they do not have.

147. At all times relevant hereto, Plaintiff and other Class members were "consumer[s]" as the term is defined in Civ. Code § 1761(d).

148. At all times relevant hereto, Defendant's Avocado Oil Sweet Potato Chips constituted "goods" as the term is defined in Civ. Code § 1761(a).

149. At all times relevant hereto, Defendant constituted a "person" as the term is defined in Civ. Code § 1761(c).

150. At all times relevant hereto, Plaintiff's and other Class members' purchase of Defendant's Product constituted a "transaction" as the term is defined in Civ. Code § 1761(e).

151. By engaging in the conduct set forth herein, Defendant violated and continues to violate § 1770(a)(5) of the CLRA because Defendant, through its acts and practices, misrepresented and continues to misrepresent the characteristics, ingredients, uses, quantities, and benefits of its Product.

152. By engaging in the conduct set forth herein, Defendant violated and continues to violate § 1770(a)(7) of the CLRA because Defendant, through its acts and practices, misrepresented and continues to misrepresent the standard, quality, and grade of its products.

153. By engaging in the conduct set forth herein, Defendant violated and continues to violate § 1770(a)(9) of the CLRA because Defendant, through its acts and practices, advertised the snack Product with the intent not to sell it as advertised.

154. By engaging in the conduct set forth herein, Defendant violated and continues to violate § 1770(a)(16) of the CLRA because Defendant, through its acts and practices, represented and continues to represent that its Product—the subject of a transaction with Plaintiff and other Class members—has been supplied in accordance with a previous representation when it has not.

155. In buying Defendant's Product, Plaintiff and other Class members relied on Defendant's acts, practices, and omissions, to their detriment. Had Plaintiff and the Class known about the true nature of the Product, they would not have purchased Defendant's goods. Plaintiff and other Class members were therefore deceived into purchasing Defendant's Product as a direct and proximate result of

Defendant's unlawful methods of competition and unfair or deceptive acts. As a direct and proximate result of Defendant's violations of the CLRA, Plaintiff and other Class members have therefore suffered damages in an amount to be proven at trial.

156. Pursuant to Cal. Civ. Code § 1782, on or about September 29 and 30, 2026, Plaintiff, on behalf of herself and other similarly situated consumers, notified Defendant of the unlawful methods of competition, the unfair acts and practices, and the CLRA violations described herein by a certified letter which contained a demand that Jackson's cease and desist its unlawful conduct, offer to make appropriate restitution, and identify and notify affected consumers, among other things.

157. If Defendant fails to provide appropriate relief for their violation of the CLRA within 30 days of the date of the notification letters, Plaintiff will amend this Complaint pursuant to Civil Code § 1782(d) to seek actual, statutory, and punitive damages in addition to equitable relief. Plaintiff is currently only seeking equitable relief as to this claim.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of all persons similarly situated, prays for a jury trial and for judgment against Defendant on all causes of action as follows:

1. That the Court enter an order certifying the class, appointing Plaintiff as representative of the Class, and appointing Plaintiff's counsel as class counsel;

2. That the Court enter judgment against Defendant for all the causes of action alleged;

3. That the Court enter an order temporarily and permanently enjoining Defendant from continuing the practices alleged herein;

4. For all recoverable compensatory, actual and consequential damages in the maximum amount permitted by law, according to proof;

5. For past, present, and future economic and non-economic damages in

an amount to be determined at trial;

6. For general damages according to proof;

7. For past, present, and future special damages, economic damages, and other damages, in an amount to be determined at trial;

8. For costs of suit;

9. For restitution and all amounts obtained by Defendant as a result of its conduct in an amount according to proof at trial;

10. For interest based on damages, as well as pre-judgment and post-judgment interest as allowed by law;

11. For any appropriate statutory damages, as permitted by law;

12. For an order requiring Defendant to pay both pre-and post-judgment interest on any amounts awarded;

13. For punitive and exemplary damages to the extent permitted by law;

14. For an award of reasonable attorney's fees and costs pursuant to California Code of Civil Procedure sections 1021.5, et seq., Civil Code section 1780(e), or as otherwise allowable by law;

15. For injunctive relief; and

16. For such other and further relief as the Court may deem proper, including but limited to equitable relief.

**<u>DEMAND FOR JURY TRIAL</u>**

Plaintiff hereby demands a trial by jury for all claims so triable.

Dated: September 30, 2026

SERINO & NOCON LLP

By: Shannon Nocon

Shannon Nocon, Esq.
Natasha Serino, Esq.
Attorneys for Plaintiff